# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# DOCKET NO. 3:22-CR-00040-FDW-DSC

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | **MEMORANDUM AND** |
| ) | **RECOMMENDATION** |
| DARRYL FITZGERALD WHITESIDE, ) | |
| Defendant. ) | |

**THIS MATTER** is before the Court on Defendant's "Motion to Suppress Fruits of Unlawful Entry and Search," (Doc. 12) filed on June 5, 2022. The "Government's Response to Defendant's Motion to Suppress," Doc. 13, was filed on June 13, 2022. The Court conducted an evidentiary hearing on June 30, 2022.

The Motion has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1), and is ripe for consideration.

Having fully considered the record and following the evidentiary hearing, the undersigned respectfully recommends that Defendant's Motion to Suppress be granted as discussed below.

### I.     FACTUAL BACKGROUND AND FINDINGS

Defendant is charged with Possession of a Firearm by a Felon, Carrying a Concealed Weapon, and violating a Protective Order. Defendant contends that Charlotte Mecklenburg Police Department officers violated his Fourth Amendment rights when they conducted a warrantless

search of his backpack. During the hearing, the Court heard testimony from Defendant and CMPD Officers Kevin Wiggins and William Wallace.

On July 19, 2021 CMPD received a call reporting a disturbance at a McDonald's located at 1201 West Sugar Creek Road. An informal memorial service was being held in the parking lot of the McDonald's for a homicide victim. Officer Wiggins heard the call and began remotely surveilling the gathering through an application on his cell phone. This application gave him access to a live stream surveillance video of the McDonald's parking lot.

Officer Wiggins began recording the live stream video when he saw Defendant holding a brown backpack. He observed a group of fifteen to twenty people socializing in the McDonald's parking lot including Defendant. Defendant was leaning against the rear of a white vehicle that was backed into a parking space. When a patrol car drove by, he tossed the backpack he had been holding into the bushes located about two to three feet directly behind the vehicle. It appears he was looking at the passing patrol car when he tossed the backpack. The patrol car did not stop or pull into the McDonald's.

After seeing him toss the backpack into the bushes, Officer Wiggins focused the camera on the Defendant and the bushes. Defendant walked around to the front of the vehicle and spoke with some of his friends. He then returned to the back of the vehicle, grabbed the backpack from under the bushes and pushed it down into the middle of the bush. Defendant checked to make sure the backpack was not visible, brushed the top of the bush with his hand to further conceal the backpack, and again checked to confirm it was not visible. No officers or patrol cars were in the parking lot at the time Defendant hid the backpack in the bushes. He then walked away from the vehicle and the bushes. The video did not show where Defendant went.

When Officer Wallace arrived at the McDonald's, he recognized Defendant as someone he had previously encountered. He looked through his notes and was able to identify him. Shortly after Officer Wallace parked in the McDonald's parking lot, Defendant went inside the McDonald's to get food. At that time, at least four of his friends remained in the parking lot close to the vehicle and the bushes where the backpack was hidden. Officer Wallace got out of his patrol car and walked towards the bystanders. While he walked to the bushes to retrieve the backpack, another officer spoke with the bystanders near the vehicle and bushes. The backpack was not visible to Officer Wallace. Officer Wiggins had to direct him to where the backpack was located. Upon locating the backpack, Officer Wallace reached into the bushes and pulled it out. He unzipped the backpack and located a loaded revolver. Officer Wallace returned to his patrol car with the backpack. Right before Officer Wallace left the premises, a woman approached him and told him the backpack belonged to Defendant. Defendant was not in the parking lot during this time and did not know his backpack had been seized until he walked out of the McDonald's.

## II. DISCUSSION

Defendant asserts that he did not abandon his backpack and the search violated his rights under the Fourth Amendment. The Government contends the backpack was abandoned property and the officers did not infringe Defendant's Fourth Amendment rights by searching it. The Court concludes that Defendant did not abandon his backpack, the warrantless search was conducted without probable cause, and the evidence should be suppressed.

The Fourth Amendment protects "the right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "To safeguard this right, courts apply an exclusionary rule, which dictates that 'evidence obtained

in violation of the Fourth Amendment cannot be used in a criminal proceeding against the victim of the illegal search and seizure." United States v. Small, 944 F.3d 490 (4th Cir. 2019) (quoting United States v. Calandra, 414 U.S. 338, 347–48 (1974)). The "capacity to claim the protection of the Fourth Amendment depends . . . upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place." Rakas v. Illinois, 349 U.S. 128, 143 (1978) (internal quotation marks omitted). "In order to demonstrate a legitimate expectation of privacy, a defendant must have a subjective expectation of privacy, and that subjective expectation must be reasonable." United States v. Ferebee, 957 F.3d 406, 412 (4th Cir. 2020) (quoting United States v. Bynum, 604 F.3d 161, 164 (4th Cir. 2010)). As the Fourth Circuit explained in United States v. Ferebee,

> The requirement that the defendant have a reasonable expectation of privacy in the property -- often characterized as whether the defendant has "standing" to challenge the search -- is not jurisdictional, but it is nonetheless a threshold inquiry that is preliminary to and distinct from the question of whether a warrant was required: "The concept of standing in Fourth Amendment cases can be a useful shorthand for capturing the idea that a person must have a cognizable Fourth Amendment interest in the place searched before seeking relief for an unconstitutional search ...." Byrd v. United States, ––– U.S. –––, 138 S. Ct. 1518, 1530, 200 L.Ed.2d 805 (2018) (emphasis added); id. at 1526 ("Whether a warrant is required is a separate question from the one the Court addresses here, which is whether the person claiming a constitutional violation has had his own Fourth Amendment rights infringed by the search and seizure which he seeks to challenge." (emphasis added) (internal quotation marks omitted)); United States v. Bellina, 665 F.2d 1335, 1339 (4th Cir. 1981) ("[T]he threshold question in every suppression case is the existence of a reasonable expectation of privacy in the area searched." (internal quotation marks omitted)). Accordingly, if the individual seeking to challenge a search does not have a legitimate expectation of privacy in the property or place being searched, the individual lacks "standing" and the inquiry ends without consideration of the merits of the search claim.

957 F.3d at 412.

"The law is well established that a person who voluntarily abandons property loses any reasonable expectation of privacy in the property and is consequently precluded from seeking to

suppress evidence seized from the property." Id. (quoting United States v. Leshuk, 65 F.3d 1105, 1111 (4th Cir. 1995)). "A finding of abandonment is based 'not on whether all formal property rights have been relinquished, but whether the complaining party retains a reasonable expectation of privacy in the articles alleged to be abandoned.'" Small, 944 F.3d at 502 (quoting United States v. Haynie, 637 F.2d 227, 237 (4th Cir. 1980)). "The abandonment inquiry focuses on the objective evidence of the intent of the person who is alleged to have abandoned the place or object." Ferebee, 957 F.3d at 413 (internal quotation omitted). "Intent to abandon may be inferred from words spoken, acts done, and other objective facts." Small, 944 F.3d at 502 (internal quotation omitted). The Fourth Circuit has cautioned "Abandonment should not be casually inferred…there has to be some voluntary aspect to the circumstances that lead to the [property] being what could be called abandoned." Small, 944 F.3d at 503.

It is well-established that persons generally have a reasonable expectation of privacy in the contents of opaque bags that they own (or have permission to use) and that they keep within their immediate control. See, e.g., Bond v. United States, 529 U.S. 334, 338 (2000) (bus passenger had reasonable expectation of privacy in "opaque bag" that he had placed in overhead compartment "directly above his seat").

Courts have generally found abandonment when there has been a disavowal of ownership of the property or the defendant has discarded the property while fleeing from law enforcement. See, e.g., Ferebee, 957 F.3d at 414 (holding that "abandonment was complete when [the defendant] told [the officer] that the backpack was not his" because "[a]t that point, [the defendant] disassociated himself from the backpack"); United States v. Taylor, 594 Fed. App'x 784, 788 (4th Cir. 2014) (holding defendant "abandoned any privacy interest he may have had in that firearm (or the ammunition) by discarding it in the shrubs" while fleeing from law enforcement); United States

v. Small, 944 F.3d at 503 (holding defendant—"a fleeing suspect tossing aside personal items while attempting to evade capture"—abandoned his cell phone); United States v. Thomas, 864 F.2d 843, 846 (D.C. Cir. 1989) (holding defendant abandoned his property when he ran in an apartment building and left his bag on the floor of the hallway after seeing law enforcement, "actions [which] were in relevant respects similar to those of a person who tosses an object during police pursuit").

The Court finds the recent Eastern District of Virginia case of United States v. Hooper, 482 F.Supp.3d 496 (E.D. Va. 2020), instructive here. In Hooper, the court held the defendant abandoned his cell phone when he left it on a table where he was culling oysters and walked off the pier onto land where agents arrested him. Id. at 509-510 (4th Cir. 2020). At no time did Defendant attempt to flee or resist arrest. In reaching this conclusion, the court noted the defendant "did not attempt to shield the phone from other employees or the public . . . who might pass by it" and therefore "ran the risk that strangers would come upon it." Id. Additionally, the defendant "made no effort to shield it from the elements, thereby risking its destruction." Id. The court further explained that although an employee of the restaurant later hid the phone in a cinder block, this was immaterial because "no evidence exist[ed] that [d]efendant told [him] . . . to safeguard the phone until he returned." Id.

The Court concludes that Defendant's Motion to Suppress should be granted because he did not abandon his backpack. Unlike the defendants in most abandonment cases, Defendant did not disclaim ownership of the backpack. He was not fleeing from law enforcement at the time the alleged abandonment occurred. There were no officers in the parking lot at the time Defendant hid the backpack in the bushes and he did not leave the McDonald's premises. Unlike the defendant in Hooper, Defendant did attempt to conceal the backpack from the public and those who might

pass by it. He initially put the backpack in the bushes, stepped away to speak with friends, and then returned minutes later to push the backpack further into the bushes. The backpack was zipped shut. Moreover, the bushes were located directly behind the white vehicle that Defendant and his friends were gathered around. When Defendant went into McDonald's, the vehicle remained in the same place and many of his friends remained outside.

Considering Defendant's actions and the other objective facts, the Court cannot conclude that he intended to abandon his backpack. The Court finds Defendant hid the backpack when a policed vehicle passed by. He then made a further attempt to conceal it within the bushes by pushing it down further and out of view. Defendant never left the McDonald's premises after he hid the backpack. Accordingly, the Court finds that Defendant did not abandon the backpack and retained a reasonable expectation of privacy in its contents. Consequently, the warrantless search and seizure of the backpack and its contents violated his Fourth Amendment rights. The Motion to Suppress should be granted.

### III.     RECOMMENDATION

**FOR THE FOREGOING REASONS**, the undersigned respectfully recommends that the Defendant's "Motion to Suppress…" (Doc. 12) be **GRANTED**.

### IV.     NOTICE OF APPEAL OF RIGHTS

The parties are hereby advised that, pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within fourteen days after service of same. Failure to file objections to this Memorandum with the District Court constitutes a waiver of the right to de novo review by the District Judge. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); Wells v.

Shriners Hosp., 109 F.3d 198, 201 (4th Cir. 1997); Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989). Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140, 147 (1985); Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Wells, 109 F.3d at 201; Wright v. Collins, 766 F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Order to counsel for Defendant, the U.S. Attorney, and to the Honorable Frank D. Whitney.

**SO RECOMMENDED**.

Signed: July 8, 2022

David S. Cayer
United States Magistrate Judge