UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:22-cr-00040-FDW-DSC

| UNITED STATES OF AMERICA, | ) |  |
|---|---|---|
|  | ) |  |
| vs. | ) |  |
|  | ) | ORDER |
| DARRYL FITZGERALD WHITESIDE, | ) |  |
|  | ) |  |
| Defendant. | ) |  |

THIS MATTER is before the Court on the Government's Objections (Doc. No. 17) to Magistrate Judge Cayer's Memorandum and Recommendation ("**M&R**"). (Doc. No. 16). The Government seeks review of the M&R's recommendation that this Court grant Defendant's Motion to Suppress Fruits of Unlawful Entry and Search, (Doc. No. 12). This matter is now ripe for review.

For the reasons set forth below, Judge Cayer's M&R is AFFIRMED and ADOPTED, the Government's Objections are OVERRULED, and Defendant's Motion to Suppress is GRANTED.

I. BACKGROUND

On February 15, 2022, Defendant Darryl Fitzgerald Whiteside ("**Defendant**") was indicted in the Western District of North Carolina for possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). See (Doc. No. 1). In the Government's Objection to the M&R, the Government does not dispute Judge Cayer's discussion of the pertinent facts or the procedural history.[1] (Doc. No. 16). Instead, the Government disputes Judge Cayer's proposed conclusions

---

[1] In its Objections, the Government does assert that "the Magistrate Judge's recommendation is based on erroneous facts," and that the Government "objects to . . . several of the findings . . . which contributed to that conclusion." (Doc. No. 16, p. 7–10). However, upon closer look at these contentions, it is clear to the Court that the Government takes

1

of law that Defendant did not abandon the backpack at issue and consequently retained a reasonable expectation of privacy in its contents, making the results of the illegal search inadmissible. (Doc. No. 17, p. 5). Accordingly, the Court ADOPTS and incorporates by reference Section I of the M&R as if fully set forth herein. (Doc. No. 16, p. 1–3).

In his Motion to Suppress, Defendant seeks to suppress "all evidence collected during the unconstitutional searches of his backpack on July 19, 2021." (Doc. No. 12, p. 4). Defendant's argument is that he never abandoned his backpack prior to law enforcement officers searching and seizing it, and because the officers lacked probable cause or a warrant to do so, the searches violated his Fourth Amendment rights. Id. at 1–4. Thus, Defendant seeks to suppress the fruits of those searches, including the firearm underlying the offense he was charged with. Id. at 4.

On July 8, 2022, after holding a hearing on Defendant's Motion to Suppress, Judge Cayer entered his M&R. (Doc. No. 16). Judge Cayer determined: (1) Defendant did not disclaim ownership of the backpack, nor was he fleeing from law enforcement, but instead he hid his backpack when a police vehicle drove by; (2) Defendant attempted to conceal the backpack from the public; and (3) Defendant never left the McDonald's premises, where his bag, the car behind which Defendant hid it, and his friends and acquaintances all remained. Id. at 6–7. Thus, Judge Cayer concluded Defendant's actions and the surrounding objective facts precluded a finding that Defendant intended to abandon his backpack, and because he consequently retained a reasonable expectation of privacy in its contents, the warrantless search and seizure violated his Fourth Amendment rights. Id. at 7. Therefore, the recommendation to this Court is to grant Defendant's Motion to Suppress. Id.

---

issue not with the M&R's description of the events as they unfolded, but rather with the Magistrate Judge's credibility determinations and conclusions of law. See (Doc. No. 16, p. 6–7). The Court discusses each "disputed fact" below.

On July 21, 2022, the Government timely filed its Objections to the M&R, (Doc. No. 17), and on August 4, 2022, Defendant filed his Response in Opposition to the Government's Objections. (Doc. No. 19).

## II. STANDARD OF REVIEW

A district court may refer a motion to suppress to a magistrate judge for a recommendation pursuant to Federal Rule of Criminal Procedure 59(b)(1). See Fed. R. Crim. P. 59(b)(1). A party may file written objections to a magistrate judge's memorandum and recommendation within fourteen days of being served with a copy of the memorandum and recommendation. 28 U.S.C § 636(b)(1). "'Any written objections must *specifically identify* the portions of the Report and Recommendation to which objections are made *and* the basis for such objections.'" Morgan v. N.C. Dep't of Health and Human Servs., 421 F. Supp. 2d 890, 893 (W.D.N.C. 2006) (emphasis in original) (quoting Thomas v. Westinghouse Savannah River Co., 21 F. Supp. 2d 551, 560 (D.S.C. 1997)); see also Battle v. U.S. Parole Comm'n, 834 F.2d 419, 421 (5th Cir. 1987) ("Parties filing objections must specifically identify those findings objected to.") (cleaned up). "Frivolous, conclusive or general objections need not be considered by the district court." Battle, 834 F.2d at 421 (quotation omitted). "A general objection, or one that merely restates the arguments previously presented is not sufficient to alert the court to alleged errors on the part of the magistrate judge." Aldrich v. Bock, 327 F. Supp. 2d 743, 747 (E.D. Mich. 2004).

Thus, "[a]n 'objection' that does nothing more than state a disagreement with a magistrate's suggested resolution, or simply summarizes what has been presented before, is not an 'objection' as that term is used in this context." Id.; see also Jones v. Hamidullah, No. 2:05-2736-PMD-RSC, 2005 WL 3298966 at *3 (D.S.C. Dec. 5, 2005) (noting objections to an M&R "on the

3

whole are without merit in that they merely rehash [the] general arguments and do not direct the court's attention to any specific portion of the [report]"). General or conclusory objections result not only in the loss of *de novo* review by the district court but also in waiver of appellate review. Tyler v. Beinor, 81 F. App'x 445, 446 (4th Cir. 2003) (per curiam); United States v. Woods, 64 F. App'x 398, 399 (4th Cir. 2003) (per curiam). If proper objections are made, a district court will review the objections under a *de novo* standard. 28 U.S.C. § 636(b)(1). Absent a specific, proper, and timely filed objection, the Court reviews only for "clear error," and need not give any explanation for adopting the M&R. Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005); Camby v. Davis, 718 F.2d 198, 200 (4th Cir. 1983).

### III. DISCUSSION

The Government advances two overarching objections to the M&R's conclusion that Defendant did not abandon his backpack. First, the Government contends the recommendation "is based on erroneous facts," and as such the Government "objects to the report's finding that [Defendant] did not abandon his reasonable expectation of privacy, [and] several of the findings it made which contributed to that conclusion." (Doc. No. 17, p. 7). Second, the Government objects to Magistrate Judge Cayer's application of the relevant standard for abandonment of property under the Fourth Amendment. Id. Viewed together, the Government's arguments dispute whether Judge Cayer's legal conclusion that Defendant did not in fact abandon his backpack was proper. Id. at 5. Accordingly, this Court will conduct a *de novo* review of the abandonment issue and will review the remainder of the M&R for clear error.

4

### A. The Government's Request for a *De Novo* Suppression Hearing

As a preliminary matter, the Court must first address the Government's request that this Court conduct a *de novo* suppression hearing. Id. at 1. The Government contends the general rule is that a district court "'must rehear' disputed 'testimony before rejecting a magistrate judge's credibility determinations,' . . . [so] the best practice" here would be to allow this Court to "hear the evidence directly, observe the witnesses, and consider their demeanor." Id. at 5 (citing Amlong & Amlong, P.A. v. Denny's, Inc., 500 F.3d 1230, 1246 (11th Cir. 2007)). The Government believes the hearing will demonstrate Defendant did abandon his backpack and require this Court's rejection of the M&R. Id. In response, Defendant contends the Government does not introduce any new evidence, raise compelling objections, or make any new legal arguments necessitating a second hearing. (Doc. No. 19, p. 1, 5). As such, Defendant argues the Government "is not entitled to a do-over," because the Government's "hope that the testimony will come out more favorably on the second try . . . is not a valid basis for a duplicative suppression hearing." Id. at 1, 10.

The Federal Magistrates Act grants district court judges "broad discretion to accept, reject, or modify the magistrate's proposed findings. United States v. Raddatz, 447 U.S. 667, 680 (1980). However, where a party timely files objections to those findings or recommendations, the district judge must "make a de novo determination." 28 U.S.C. § 636(b)(1). Nevertheless, a "'de novo determination' is not necessarily the same as a de novo hearing and . . . the decision to rehear testimony is within the sole discretion of the district judge, even as to those findings based on the magistrate's judgment as to the credibility of the witnesses before him." Proctor v. State Gov't of North Carolina, 830 F.2d 514, 518 n.2 (4th Cir. 1987) (quoting Raddatz, 447 U.S. at 667). Thus,

district judges may, but are not required to, hear additional witness testimony in reviewing the record and the magistrate's proposed findings or recommendations. Raddatz, 447 U.S. at 666.

The Court has reviewed the record, including the hearing transcript and exhibits, and defers to—and agrees with—Judge Cayer's determinations regarding witness credibility. Further, in support of its objections the Government has not provided any new evidence or persuasive legal arguments warranting an additional hearing, nor has the Government provided any compelling reason to question Judge Cayer's credibility determinations.[2] Therefore, there is no need for a secondary hearing concerning the Government's objections to Magistrate Judge Cayer's M&R. Accordingly, the Court DENIES the Government's request to conduct a *de novo* suppression hearing and will now address each of the Government's objections in turn.

B. The Government's Objections to "Erroneous Facts"

The Government objects to three findings Magistrate Judge Cayer made leading to his conclusion that Defendant did not abandon his backpack, and thus retained a reasonable expectation in the privacy of its contents. (Doc. No. 17, p. 7). In reaching this conclusion, Judge Cayer emphasized three key facts: (1) Defendant hid his backpack briefly when a police vehicle drove by rather than while fleeing from law enforcement; (2) Defendant attempted to conceal the backpack; and (3) Defendant never left the McDonald's premises, but when he went inside the restaurant, his friends remained close to the backpack. (Doc. No. 16, p. 6–7). The Government disputes the first and third facts, arguing: (1) Defendant was fleeing; (2) there were law enforcement officers in the parking lot when Defendant hid his backpack; and (3) Defendant did

---

[2] The Government's only explicit credibility dispute is based on Defendant's testimony that he did not leave McDonald's premises. (Doc. No. 9). For the reasons outlined below, the Court finds no reason to challenge Judge Cayer's credibility determination on this matter.

6

leave the premises, and even if he was just in the McDonald's he was nowhere near his bag. While these objections appear to be factual, the Government does not challenge Judge Cayer's determination of how the events at issue unfolded inasmuch as it challenges the weight he ascribed to these facts in concluding Defendant did not abandon his backpack. Based on the following, the Court finds these factual objections are meritless and agrees with Judge Cayer's findings.

First, the Government objects to the M&R's finding that Defendant "was not fleeing from law enforcement at the time the alleged abandonment occurred." (Doc. No. 16, p. 6). To that end, the Government alleges Defendant only sought to discard his bag when police officers approached the parking lot where he was gathered with friends and acquaintances, and that surveillance video showing his demeanor and conduct "make unmistakably clear that he was discarding his backpack in response to the presence of police." (Doc. No. 17, p. 8). The Government correctly states that discarding a firearm while fleeing from the police to avoid being caught with it constitutes abandonment. Small, 944 F.3d at 503–04; United States v. Taylor, 594 F. App'x 784, 788 (4th Cir. 2014). However, the Government concedes Defendant was not running from the police when he hid his bag. Instead, it argues that because Defendant hid his backpack in a bush for the same purpose—to avoid being caught by law enforcement in possession of the firearm—his actions effectively constitute abandonment. The Court disagrees. Such "hot pursuit" or flight cases involve suspects "deliberately abandon[ing]" assorted "personal items while attempting to evade capture." Small, 944 F.3d at 503–04. Further, these individuals "[run] the risk that complete and total strangers would come upon" their belongings, and by voluntarily tossing them aside, the possessor also "relinquish[es] his reasonable expectation of privacy" he had in the abandoned item.

Id. at 504. Thus, the Government's asserted cases are inapposite and distinguishable from Defendant's conduct.

Other than attempting to argue that Defendant was effectively fleeing when he hid his backpack in the bushes, the Government fails to introduce any additional evidence challenging Judge Cayer's finding that Defendant was not fleeing at that time. Further, the record contains ample support for this conclusion. The Government's own objections state that when Officer Wiggins first began surveilling the parking lot, Defendant was standing with his body against the trunk of a white parked car with a group of people, hid the bag in the bushes directly behind him after a patrol car drove by, and then continued talking with his friends and acquaintances for "about three minutes" after initially hiding the bag. (Doc. No. 17, p. 1–2). Then, Defendant further attempted to conceal the bag's location in the bush and after approximately a minute, Defendant walked out of the camera's view. Id. at 2. None of these actions indicate flight; rather, they show Defendant was aware of a passing-police vehicle, but he remained in the parking lot to continue his conversations with others there. When he did leave the parking lot, he was walking, not running. Because neither the Government's arguments to the contrary, nor the objective facts on the record, provide any indication of flight, the Court overrules the Government's objection to Judge Cayer's finding that Defendant was not fleeing from the police when he hid his backpack.

Second, the Government objects to the M&R's finding—which supported the conclusion that Defendant was not fleeing from the police—that there were no police officers in the parking lot when Defendant hid his backpack. The Government contends Officer Wallace's testimony and the surveillance footage showing Defendant's behavior demonstrate the opposite conclusion; not only were police in the area when Defendant hid his backpack, but they were also in the parking

8

lot at that time. Defendant responds by pointing out Judge Cayer's finding is "simply what the undisputed evidence showed." (Doc. No. 19, p. 8). The Court agrees with Defendant.

The Government's statement of facts in its objection to the M&R establish when surveillance first began, Officer Wiggins was live-streaming footage of the parking lot; Defendant hid the backpack first under the white car as police vehicles "drove by the parking lot" and waited to hide it in the bush presumably until the patrol cars were out of sight; Officer Wallace drove past the McDonald's parking lot and saw Defendant standing by the white car with a group of people. Id. at 1–2. Officer Wallace then circled around, drove through the parking lot entrance, and parked at the back of the lot on the opposite side of where the group was gathered. Id. at 2. He does not remember exactly when he saw Defendant in the parking lot, but at some point, he saw and recognized Defendant. (Doc. No. 19-1, p. 25–26). Officer Wallace further testified that by the time he parked in the McDonald's parking lot the group of people was beginning to dissipate and when he exited his vehicle he did not see, nor does his body-warn camera footage show, Defendant. Id. at 27, 29–30. Additionally, Officer Wiggins testified that he saw Defendant leave the surveillance camera's frame but did not see him return, and then upon seeing Officer Wallace arrive he began directing him towards the backpack's location. Id. at 13. Defendant reasonably concludes that because Officer Wiggins had to direct Officer Wallace, Officer Wallace was not parked in the parking lot at the time Defendant hid his bag. Id. at 13. Together, these facts support Defendant's assertion that the police were not present when he hid his backpack. Id. at 57.

Instead, the evidence shows Officer Wiggins was surveilling the scene, the patrol cars were driving by throughout the time Defendant was in the parking lot, and Officer Wallace only arrived after Defendant had left. The record thus supports the Government's assertion that "police were

9

in the area" when Defendant hid his backpack, but not its further statement that the police were actually in the parking lot at that time. (Doc. No. 17, p. 9). Therefore, the Court overrules the Government's objection to the M&R's finding that there were no officers in the parking lot when Defendant hid his backpack in the bushes. As such, this finding properly supports Judge Cayer's conclusion that Defendant was not fleeing from the police when he hid his bag.

Finally, the Government objects to the M&R's finding that Defendant "did not leave the McDonald's premises." (Doc. No. 16, p. 6). The Government argues the M&R inappropriately credits Defendant's own testimony on that fact and attempts to challenge Defendant's credibility in so testifying. Defendant testified that he left the bag in the bushes because McDonald's has "a policy about no weapons." (Doc. No. 19-1, p. 57). Instead, Defendant said he left the bag in the bush with four of his friends around it "because [he] knew nobody would mess with it." Id. at 53, 57. The Government contends that this testimony is unreliable because both state and federal policies prohibited Defendant from possessing a firearm, which he violated when he brought the gun in the backpack with him in the first place. However, the Government did not challenge Defendant about whether he was actually in the McDonald's during the initial suppression hearing, and the Government offers no additional evidence giving reason to doubt this conclusion. The Government's additional argument that even if Defendant was inside the McDonald's, he was not anywhere near the bush where he hid his backpack, is similarly unpersuasive. The evidence demonstrates Defendant hid his backpack in a bush at the foot of a parking spot, crossed the parking lot, and entered the McDonald's. This is not a mall parking lot or an urban parking deck, which could provide for a great distance between a parking spot on one side of the lot and the entrance to the establishment on the other. Instead, it is a parking lot for a single McDonald's: to

10

get from the bush to the establishment, Defendant merely had to walk the length of one parking spot, two lanes for the restaurant's thru-traffic, and the length of another parking spot. See (Gov. Ex. 1, Doc. No. 17, p. 10). Because the record provides no cause to challenge Judge Cayer's credibility findings concerning Defendant's testimony, and because the Government has not provided any evidence challenging his conclusion, the Court overrules the Government's objection to the M&R's finding that Defendant did not leave McDonald's premises. Therefore, this finding supports Judge Cayer's conclusion that Defendant did not hide his backpack while fleeing from law enforcement.

### C. The Government's Objection to the Abandonment Standard

Next, the Government objects to the standard Magistrate Judge Cayer applied in determining Defendant did not abandon his backpack when he hid it in the bushes. The Government advances two specific contentions: (1) the M&R attaches "inappropriate significance" to its findings that Defendant "did not disclaim ownership of the backpack" and "was not fleeing from law enforcement at the time the alleged abandonment occurred," (Doc. No. 16, p. 6); and (2) the M&R improperly emphasizes Defendant's "attempt to conceal the backpack," while giving "insufficient weight to the 'objective facts.'" (Doc. No. 16, p. 6–7). In response, Defendant argues these findings were appropriately considered as part of the abandonment analysis, and that Defendant's successful effort to conceal the bag in an area that was difficult to access by the public where his friends and acquaintances were located all demonstrate Defendant's reasonable expectation in the privacy of his belongings. For the reasons set forth above, the Court finds Defendant was not fleeing from the police when he hid his backpack in the bush, there were no officers in the parking lot when Defendant did so, and Defendant did not leave the McDonald's

11

premises. Thus, the Court must now determine whether, based on the record and the applicable legal standard, Defendant abandoned his backpack when he hid it in the bush. For the reasons discussed below, the Court agrees with Judge Cayer's determination and finds Defendant did not abandon his backpack.

The Fourth Amendment protects "the right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Further, "the Fourth Amendment protects people, not places," such that "[w]hat a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment . . . [b]ut what he seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected." Katz v. United States, 389 U.S. 347, 351–52 (1967).

Courts apply the exclusionary rule to protect this right, which establishes that "evidence obtained in violation of the Fourth Amendment cannot be used in a criminal proceeding against the victim of the illegal search and seizure." United States v. Small, 944 F.3d 49, 502 (4th Cir. 2019) (quoting United States v. Calandra, 414 U.S. 338, 347–48 (1974)). However, "the capacity to claim the protection of the Fourth Amendment depends . . . upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place." United States v. Ferebee, 957 F.3d 406, 412 (4th Cir. 2020) (quoting Rakas v. Illinois, 439 U.S. 128, 133–34 (1978)). Further, for a defendant to demonstrate such a legitimate expectation of privacy, and thus a cognizable Fourth Amendment claim, they "must have a subjective expectation of privacy, and that subjective expectation must be reasonable." Id. (quoting United States v. Bynum, 604 F.3d 161, 164 (4th Cir. 2010)). The first prong considers the defendant's subjective beliefs, and asks whether the defendant, "by his conduct, has exhibited an actual expectation of

12

privacy; that is, whether he has shown that 'he [sought] to preserve [something] as private." Bond v. United States, 529 U.S. 334, 338 (2000) (quoting Smith v. Maryland, 442 U.S. 735, 740 (1979)) (finding the petitioner sought to preserve privacy because he used an opaque bag and placed it in the bus's over-head compartment above his seat). The second prong requires "'an objective analysis' which considers the defendant's actions and intentions." Small, 944 F.3d at 502 (quoting United States v. Davis, 657 F. Supp. 2d 630, 647–48 (D. Md. 2009), aff'd, 690 F.3d 226 (4th Cir. 2012)); see also Smith, 442 U.S. at 740 (quoting Katz, 389 U.S. at 353) ("The second question is whether . . . the individual's expectation, viewed objectively, is 'justifiable' under the circumstances."). Under this prong, the law enforcement officer's intent is irrelevant. Bond, 529 U.S. at 338 n.2 (2000).

Finally, the Supreme Court has held warrantless searches and seizures are "per se unreasonable" under the Fourth Amendment, with a few exceptions. Katz, 389 U.S. at 357. One such exception is that of abandonment. See Small, 944 F.3d at 502. "The law is well established that a person who voluntarily abandons property loses any reasonable expectation of privacy in the property and is consequently precluded from seeking to suppress evidence seized from the property." Ferebee, 957 F.3d at 412 (quoting United States v. Leshuk, 65 F.3d 1105, 1111 (4th Cir. 1995)). In analyzing abandonment, "[t]he proper test . . . is not whether all formal property rights have been relinquished, but whether the complaining party retains a reasonable expectation of privacy in the articles alleged to be abandoned." United States v. Haynie, 637 F.2d 227, 237 (4th Cir. 1980) (quoting United States v. Wilson, 472 F.2d 901, 903 (9th Cir. 1973)). Thus, the "inquiry focuses on the objective evidence of the intent of the person who is alleged to have abandoned the place or object," Ferebee, 957 F.3d at 413 (internal quotation omitted), and a

13

defendant's "[i]ntent to abandon may be inferred from words spoken, acts done, and other objective facts." Small, 944 F.3d at 502 (internal quotation omitted). However, the Fourth Circuit warns "[a]bandonment should not be casually inferred . . . there has to be some voluntary aspect to the circumstances that led to the [property] being what could be called abandoned." Id. at 503.

Here, officers searched and seized Defendant's backpack without a warrant or probable cause. To avoid the suppression of the evidence resulting from that warrantless search, the Government contends Defendant abandoned his backpack, making the search permissible under the Fourth Amendment. In his M&R, Magistrate Judge Cayer disagreed, and so does this Court.

It is undisputed that Defendant had a reasonable expectation of privacy, protected by the Fourth Amendment, in the contents of his backpack while it was in his direct control. See Bond, 529 U.S. at 338. The parties instead dispute whether Defendant retained that privacy interest when he placed the backpack in the bush and entered the McDonald's. Because the Fourth Amendment "protects people, not places," Katz, 398 U.S. at 351, from "unreasonable government intrusions into their legitimate expectations of privacy," United States v. Place, 462 U.S. 696, 706–07 (1983) (internal quotations omitted), Defendant must demonstrate first that he had a subjective expectation of privacy, and second that his expectation was objectively reasonable. Ferebee, 957 F.3d at 412. Based on the record, the Court finds Defendant satisfied this burden.

First, Defendant's conduct and testimony show he retained an expectation of privacy in his backpack and the contents it held. Defendant was with a group of friends and acquaintances standing near a parked vehicle when he saw a patrol car drive by, then tossed the backpack he was holding into the bushes. He continued speaking with the group for a few minutes, then went back to the bush and pushed the backpack farther down into it. He checked to make sure it was not

14

visible through the foliage, brushed his hand along the top of the bush to re-settle the leaves, and a second time checked to confirm the backpack was not visible. Following these attempts to conceal the backpack, he walked out of the surveillance camera's frame, through the parking lot, and into the McDonald's. Both the surveillance video and his own testimony confirm that when Defendant left his backpack in the bush, four of his friends were still standing around the parked car next to that bush. Defendant further testified that he felt confident leaving his personal belongings with his friends because they would not have allowed anyone to go through his bag. Thus, before leaving his backpack, Defendant confirmed it was well-hidden and protected by his friends. These actions show Defendant clearly sought to keep the contents of his backpack private, and his actual expectation that they remain private during his absence.

Second, Defendant's expectation of privacy in his backpack and the contents within is objectively reasonable. The analysis does not require that an individual relinquish all formal property rights—it asks whether the individual retains an objectively reasonable expectation of privacy in his item based on the surrounding circumstances. Here, the backpack was zipped closed, and Defendant did not leave the McDonald's premises after placing it in the bush; rather, he went into the restaurant after confirming his bag was sufficiently concealed. Moreover, Defendant did not leave his bag alone in a public parking lot; he left it where his friends were still gathered. Rather than abandoning his backpack out in the open, Defendant took active steps to ensure it would remain hidden. He made multiple attempts to shield the bag from passersby and the public to keep it hidden until he returned. Defendant's objective intent was clear—anyone watching him take precautions to conceal his backpack would recognize he intended to retain privacy in the contents of the bag. Defendant's conduct and the objective circumstances reveal he intended not

15

to abandon the backpack when he hid it in the bushes, but instead to conceal it for a brief period. The Government's arguments to the contrary are unpersuasive.

First, the Government contends the M&R attached too much importance to its findings that Defendant neither disclaimed his backpack nor was fleeing from law enforcement when he hid it. To the extent disclaimer and flight reflect clear, objective intent to abandon personal property, they are appropriate considerations in analyzing abandonment. The abandonment inquiry requires looking at all the surrounding circumstances to determine whether the individual "voluntarily discarded, left behind, or otherwise relinquished his interest in the property in question." Ferebee, 957 F.3d at 413 (internal quotations omitted). The Government is correct that neither flight nor verbal disclaimer are required for abandonment to occur. United States v. Stevenson, 396 F.3d 538, 547 (4th Cir. 2005). However, the M&R does not say otherwise: it merely explains that courts will generally find abandonment where disavowal or flight has occurred, and thereafter discusses United States v. Hooper, 482 F. Supp. 3d 496 (E.D. Va. 2020). (Doc. No. 16, p. 5–6). There, the Court found abandonment when the individual neither fled from law enforcement nor disclaimed his property; he instead walked away, leaving his cell phone on a table. Hooper, 482 F. Supp. 3d at 509-510. Judge Cayer listed out a number of facts that each weighed against finding abandonment, and the absence of flight and disclaimer were just two of them. The Government contends Defendants actions should be understood as disclaiming his privacy interest in his backpack, but for the reasons discussed above, the Court disagrees. The objective facts show that instead of voluntarily discarding his backpack, Defendant temporarily concealed it. Therefore, because Judge Cayer did not attach too much importance to the absence of disavowal and flight and the Government has not shown otherwise, the Court overrules this objection.

16

The Government's final objection asserts the M&R improperly emphasized Defendant's attempt to conceal his backpack while failing to give adequate weight to the objective facts. The Government contends that Defendant's subjective desire to hide his backpack cannot be outweighed by the objective unreasonableness of leaving that backpack in a restaurant's public parking lot then leaving the area, where Defendant had no legitimate authority or control. Conversely, Defendant correctly points out that this argument does not address the specific circumstances of this case: Defendant did not simply leave the backpack out in the open in the public parking lot for anyone to come across. Instead, he confirmed it was well-hidden in the bush directly next to where he was gathered with friends, and his friends and the car remained behind while he went into McDonald's. The bag was neither alone nor readily accessible; it was surrounded by Defendant's friends, concealed beneath a bush. Defendant's subjective intent that his belongings remain private may overlap with the objective reasonableness of that expectation, but it is objectively reasonable to believe that in taking steps to adequately conceal personal items and then leaving them under the supervision of friends, the individual could fairly expect to retain his privacy interest in those items. See Katz, 389 U.S. 347 ("But what [an individual] seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected."). While the Government concludes Defendants actions unavoidably constitute abandonment, for the reasons above, the Court disagrees. Further, Magistrate Judge Cayer appropriately considered both the subjective and objective factors in reaching his conclusion, and the Government's arguments fail to show otherwise. Accordingly, this Court overrules the Government's final objection to the M&R.

17

### D. Clear Error Review

As set forth above, the only specific objections raised in the Government's Objections to the Magistrate Judge's M&R concern whether Defendant abandoned his backpack. See (Doc. No. 17). The Magistrate Judge's remaining conclusions, therefore, are reviewed for clear error. In the absence of a specific, proper, and timely objection, the Court need not give any explanation for adopting the M&R. Diamond, 416 F.3d at 315; Camby, 718 F.2d at 200. Having carefully reviewed the M&R, the Court finds no clear error as to Magistrate Judge Cayer's findings and conclusions. Accordingly, this Court AFFIRMS Judge Cayer's M&R and holds that because Defendant did not abandon the backpack, the warrantless search and seizure of the backpack and its contents violated Defendant's Fourth Amendment rights. Therefore, the Motion to Suppress is GRANTED.

### IV. CONCLUSION

For the foregoing reasons, the Magistrate Judge's M&R, (Doc. No. 16), is AFFIRMED and ADOPTED, the Government's Objections to the M&R, (Doc. No. 17), are OVERRULED, and Defendant's Motion to Suppress, (Doc. No. 12), is GRANTED.

IT IS SO ORDERED.

Signed: November 4, 2022

_____
Frank D. Whitney
United States District Judge